IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PILAR DOMER,

                Plaintiff,

v.                                                                                        OPINION and ORDER

MENARD, INC.,                                                              22-cv-444-jdp

                Defendant.

---

In this proposed class action, plaintiff Pilar Domer alleges that defendant Menard, Inc., the owner of Menards home improvement stores, adds a hidden fee to items purchased on the Menards website that are picked up in-store. Domer's initial complaint asserted claims for unjust enrichment, breach of contract, and violations of state consumer protection statutes. Dkt. 1-1. Menards moved to compel Domer to arbitrate her claims, Dkt. 6, and Domer responded by submitting an amended complaint that omitted her claims for breach of contract. Dkt. 11. The court denied Menards' arbitration motion without prejudice. Dkt. 18.

Before the court is Menards' renewed motion to compel arbitration directed at Domer's amended complaint. Dkt. 19. Menards contends that the arbitration clause in Menards' terms of service applies to all of Domer's claims, not just her now-abandoned claims for breach of contract. Domer counters that she did not agree to arbitrate her claims, and that even if she did, her remaining claims fall outside of the scope of the agreement. The court will grant Menards' motion. Menards' website gave Domer reasonable notice that she was accepting Menards' terms of service by placing an order, so Domer agreed to the arbitration clause by completing her purchase. Domer's consumer protection and unjust enrichment claims related to her purchase fall within the broad language of the arbitration clause.

BACKGROUND

The facts relevant to the motion are not in dispute. This lawsuit arises from Domer's purchase of a can of paint from the Menards website. Menards gives customers three options for receiving their online purchase: customers may (1) have the item shipped to them; (2) pay online, go to the Menards' store, and locate the item on the shelf themselves; or (3) have a Menards employee locate the item and prepare it for in-store pickup. If a customer chooses the third option, Menards charges the customer a handling fee of $1.40 per item. Domer elected to have an employee prepare her item for pickup. She alleges that Menards did not disclose that selecting this option would incur an additional fee.

When Domer went to complete her purchase, she was presented with a checkout page. Menards submitted a screenshot of the checkout page from a different order to illustrate how the page is organized:



Dkt. 21-1, at 2. Domer does not dispute that the screenshot accurately represents the layout of the checkout page when she completed her purchase in April 2021.

Near the bottom of the page is a two-line notice that begins "Please note" in a bold font. The first two sentences of the notice are rules about the use of gift cards. The third sentence provides that "By submitting your order you accept our Terms of Order." *Id.* Underneath the notice are two hyperlinks that read "View Return Policy" and "Terms of Order Information." Clicking the "Terms of Order Information" opens up a textbox with the Terms of Order. Among other things, the Terms of Order provide that the purchaser "agrees that any and all controversies or claims arising out of or relating to this contract" must be resolved in arbitration. Dkt. 21-2, at 2. Domer did not see the notice or the Terms of Order Information hyperlink when she went to complete her purchase.

This court has jurisdiction over this proposed class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the amount in controversy plausibly exceeds $5,000,000 and there is at least minimal diversity between the parties: Domer is a citizen of Indiana and Menards is a citizen of Wisconsin. *See* Dkt. 1, ¶¶ 7–8.

ANAYLSIS

Under the Federal Arbitration Act, the court will compel arbitration if three conditions are present: (1) a valid, written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. 9 U.S.C. § 4; *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). The third element isn't in dispute, but the first two are.

**A. Valid agreement to arbitrate**

Whether an agreement to arbitrate has been formed is governed by state-law principles of contract formation. *Gore v. Alltel Communs., LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). A federal court exercising diversity jurisdiction applies the law of the forum state if there is no dispute about the choice of law. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002). Both sides assume that Wisconsin law governs, so that is the law that the court will apply. But the case calls for the application of general rules of contract formation, so the choice of law is not likely to affect the outcome. Both sides rely primarily on persuasive authority applying the law of other states, all of which appear to have substantially similar rules for determining whether parties have mutually assented to a contract term. Regardless of which state's law applies, the question is whether Domer objectively manifested her assent to the arbitration agreement.[1]

It is undisputed that Menards' Terms of Order contained an arbitration clause. And Domer does not dispute the general principle that a customer can manifest her assent to contract by completing a purchase on a business's website. *See Dickman v. Vollmer*, 736 N.W.2d 202, 253 (Wis. Ct. App. 2007) ("An implied contract may be established by the parties' conduct"). But Domer contends that she did not assent to Menards' Terms of Order by submitting her order on Menards' website.

---

[1] *See Wells Fargo Bus. Credit v. Hindman*, 734 F.3d 657, 667 (7th Cir. 2013) ("objective manifestations of assent" are controlling under Wisconsin law); *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) ("Illinois courts use an objective approach" to determine mutual assent); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) (touchstone under New York and California law "is the parties' outward manifestations of assent.").

In determining whether Domer agreed to Menards' Terms of Order, the court must consider whether Domer objectively manifested her assent to contract through her actions; her subjective beliefs about the terms of the agreement are immaterial. *Wells Fargo Bus. Credit v. Hindman*, 734 F.3d 657, 667 (7th Cir. 2013). The case turns on whether a reasonable person in Domer's position would realize that she was assenting to the arbitration provision found within the Terms of Order by completing her purchase. *See Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74–75 (2d Cir. 2017). Another way to get at the same question is to ask whether the website provided reasonable notice of the terms of the agreement. *See Sgourous*, 817 F.3d at 1034. There is no dispute about the content or layout of Menards' checkout page at the time Domer completed her purchase, so the issue can be resolved as a matter of law. *See Consol. Papers, Inc. v. Dorr-Oliver, Inc.*, 153 Wis. 2d 589, 598, 451 N.W.2d 456, 461 (Ct. App. 1989) ("Since the facts are undisputed, issues concerning the contract formation are questions of law.").

In deciding whether a website provided reasonable notice of its terms of service, courts have considered factors including (1) whether there is a clear prompt directing the purchaser to read the terms; (2) the size of the prompt; (3) use of a bold font or contrasting colors; (4) the visual clarity of the website's layout; (5) whether the user can see the link to the terms without having to scroll; and (6) the spatial proximity between the notice and the mechanism for manifesting assent, such as a purchase button. *See Sgouros*, 817 F.3d at 1034–35; *Meyer*, 868 F.3d at 74–75; *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 884 (N.D. Ill. 2020). No single factor is dispositive: the question is whether the website provided reasonable notice "in light of the whole webpage." *Nicosia v. Amazon, Inc.*, 834 F.3d 220, 237 (2d Cir. 2016).

The court does not endorse Menards' website as the ideal presentation of its terms. But applying those factors, the court concludes that Menards' website provided reasonable notice of the terms governing Domer's purchase. The website provides a clear prompt directing the user to read the Terms of Order. Text at the bottom of the screen expressly states that "By submitting your order you accept our Terms of Order." The hyperlink to "Terms of Order Information" is directly beneath that notice. Other courts have concluded that similar language, accompanied by a hyperlink, provided reasonable notice that the user was assenting to the linked terms. *See Acaley v. Vimeo, Inc.,* 464 F. Supp. 3d 959, 966 (N.D. Ill. 2020) ("By continuing I agree to **the terms**." (emphasis in original)); *Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2021 WL 3033586, at *6 (N.D. Ill. July 19, 2021); *cf. Sgouros*, 817 F.3d at 1035 (webpage "contained no clear statement that [plaintiff's] purchase was subject to any terms and conditions of sale.").

The notice and hyperlink are also visually conspicuous. The notice and hyperlink are smaller than the headers on the webpage, such as "Billing Information" and "Order Summary," but they are the same size as the body text used underneath those headers. The notice begins "Please note" in a bold font, which directs the reader's attention to it. Although the first two sentences of the notice are about gift cards, the bold "Please note" would encourage a reasonable user to read through to the end of the notice. The hyperlink to the "Terms of Order Information" is directly underneath the notice, and the green hyperlink text stands out from the white background and the black text above it. The page is relatively uncluttered: there are few links other than the link to the Terms of Order. *Cf. Nicosia*, 834 F.3d at 237 ("there appear to be between fifteen and twenty-five links on the Order Page"). And it is possible to see the notice and hyperlink on a computer screen without having to scroll.

The most significant problem that Domer identifies with the webpage is that the notice and hyperlink are not close to the "Submit Order" button. The purchase button is in a column near the top right side of the screen, and the notice and hyperlink are placed near the bottom left. Domer contends that Menards' webpage is similar to the purchase screen in *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873 (N.D. Ill. 2020), in which the district court concluded that users were unlikely to see the terms of service because they were not placed near the "Pay Now" button. But Menards' notice is more conspicuous than the notice in *Wilson*. The notice in *Wilson* was in small, unbolded text, and it was placed underneath large, colorful buttons that were not obviously related to the transaction at hand. Menards' notice, by contrast, is flagged with bolded text, is a similar size to other text on the screen, and is placed next to credit card and shipping information that a user is likely to review prior to submitting their order. The distance between the notice and the purchase button does not render Menards' disclosure unreasonable.

Domer resists this conclusion and provides two additional arguments for why she did not have reasonable notice of the arbitration agreement. First, Domer contends that she did not have notice of the terms because the website did not require her "to review or scroll through the Terms to complete her order." Dkt. 23, at 19. But a website can provide reasonable notice of its terms of order by providing a hyperlink to the relevant terms. *See Acaley*, 464 F. Supp. 3d at 968. Menards was not required to ensure that Domer actually reviewed the Terms of Order. Users "are free to sign legal documents without reading them, but the documents are binding whether read or not." *Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999). Menards merely needed to provide reasonable notice that Domer was accepting the

Terms of Order by completing her purchase. Menards did so by providing notice that "By submitting your order you accept our Terms of Order" and including a link to the terms.

Second, Domer contends that Menards did not provide reasonable notice that the Terms of Order included an arbitration clause. The Terms of Order are laid out in two large paragraphs in a popup box. The formatting makes the terms somewhat difficult to read, and the arbitration clause is not bolded or otherwise highlighted. But Domer provides no authority that each individual term in a terms of service document must be conspicuous if the user has reasonable notice that they're accepting *all* of the terms. The notice and hyperlink were sufficient to place a reasonable person on notice that there were terms and conditions attached to the purchase and "that it would be wise to find out what the terms and conditions were before making a purchase." *Sgouros*, 817 F.3d at 1035 (quoting *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 835 N.E.2d 113, 296 Ill. Dec. 258 (Ill. Ct. App. 2005)). Domer manifested her assent to accept the Terms of Order by going through with the purchase, so the fact that an individual term does not stand out from the others is immaterial.

Menards provided reasonable notice that a user accepted the Terms of Order by completing their purchase. By going through with her purchase, Domer manifested her assent to those terms, including the arbitration agreement.

**B. Scope of the arbitration agreement**

In the alternative, Domer contends that her consumer protection and unjust enrichment claims fall outside the scope of the arbitration agreement. The arbitration clause provides that Domer will arbitrate "any and all controversies or claims arising out of or relating to this contract[.]" Domer argues that the clause does not encompass her remaining claims because they are not about the terms of her purchase contract with Menards.

8

This argument fails. "[O]nce it is clear the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration." *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998). The phrase "arising out of" is an "expansive" clause that "broadly . . . include[s] all manner of claims tangentially related to the agreement, including claims of fraud, misrepresentation, and other torts involving both contract formation and performance." *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002). Accordingly, an agreement to arbitrate all controversies that arise out of a contract encompasses "any dispute between contracting parties that is in any way connected with their contract." *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993).

All of Domer's claims are related to her contract of purchase with Menards: Domer agreed to pay Menards money, and Menards provided her with a can of paint in exchange. The theory behind her consumer protection and unjust enrichment claims is that Menards misled her about the price that she would pay for that purchase. Those claims could easily be recast as breach of contract claims based on an alleged misrepresentation of the terms of the purchase. Domer cannot avoid arbitrating her remaining claims merely because they are brought under different causes of action. *See Kroll v. Doctor's Assocs.*, 3 F.3d 1167, 1170 (7th Cir. 1993) (tort claims); *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (statutory claims). What matters is the substance of her claims. Domer's remaining claims arise out of her purchase contract with Menards, so she must arbitrate them.

CONCLUSION

The court concludes that Domer assented to the arbitration clause in Menards' Terms of Order and that her claims fall within the scope of the clause. Menards asked the court to stay rather than dismiss the case, but this court's general practice is to dismiss the case if all of the claims are arbitrable. *See Rock Hemp Corp. v. Dunn*, 574 F. Supp. 3d 624, 633 (W.D. Wis. 2021); *Childers v. Menard, Inc.*, No. 20-cv-107-jdp, 2020 WL 5303934, at *4 (W.D. Wis. Sept. 4, 2020). This practice is consistent with recent Seventh Circuit decisions stating that "[d]ismissal, not transfer, is the proper remedy" when a party files a lawsuit that is governed by an arbitration agreement. *Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs.*, 7 F.4th 555, 561 n.7 (7th Cir. 2021).

ORDER

IT IS ORDERED that defendant Menard, Inc.'s renewed motion to compel arbitration, Dkt. 19, is GRANTED. The case is DISMISSED without prejudice.

Entered July 26, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge